[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14799
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-00721-WKW-WC

SUSAN TILL,

Plaintiff-Appellant,

versus

LINCOLN NATIONAL LIFE INSURANCE COMPANY,

Defendant-Appellee,

GILLIARD HEALTH SERVICES, INC. DISABILITY PLAN, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(January 30, 2017)

Before JULIE CARNES, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Susan Till ("Till") filed suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., challenging the decision of defendant-appellee Lincoln National Life Insurance Company ("Lincoln") to deny her claim for long-term disability benefits. Lincoln filed a motion for judgment as a matter of law to which Till responded with a motion for summary judgment. After full briefing, the district court entered an order granting Lincoln's motion and denying Till's. The district court also subsequently denied Till's motion to reconsider. After careful consideration of the record on appeal, the parties' briefs, and the relevant law, this Court concludes that the decision is due to be affirmed.

## I.    Background

Till was previously employed as a radiology technologist by an employer who purchased long-term disability insurance through Lincoln for its employees. Till has a long history of back problems and has not worked since December 5, 2012, when she exacerbated her back condition. Till applied for long-term disability benefits under the plan and Lincoln denied the claim. She administratively appealed the decision twice, and Lincoln upheld the denial of benefits on both appeals. Till then brought an ERISA suit in the Middle District of Alabama challenging Lincoln's denial of her claim. On dispositive cross-motions the district court entered an exceptionally detailed seventy-four-page judgment in

favor of Lincoln and against Till. The district court then denied several postjudgment motions by Till, including a motion to reconsider. This appeal followed.

## II. Discussion

We begin by first examining Till's claim that Lincoln's decision was arbitrary and capricious before turning to consideration of her claim that she was denied a full and fair review. We review de novo a district court's decision to affirm a plan administrator's ERISA benefits determination, applying the same legal standards that governed the district court's decision. Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011).

A. *The Administrator's Decision—Arbitrary and Capricious Review*

Although  ERISA does not provide the standard by which courts are to review the decisions of plan administrators, we have established the following six-step framework:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

3

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Blankenship, 644 F.3d at 1355 (citing Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195 (11th Cir. 2010)).[1]

At step four of our test, a conflict of interest exists "where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds." Id. (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112, 128 S. Ct. 2343, 2348 (2008)). Even if a conflict exists and, accordingly, a court reaches step six, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." Doyle v. Liberty Life Assurance Co. of Bos., 542 F.3d 1352, 1360 (11th Cir. 2008). The severity of the conflict and the nature of the case will determine the effect that a conflict of interest has in any given case and, accordingly, we look to the conflict's "inherent or case-specific importance." Blankenship, 644 F.3d at 1355 (citing Glenn, 544 U.S. at 117, 128 S. Ct. at 2351–52).

---

[1]    In the context of ERISA cases, the phrases "arbitrary and capricious" and "abuse of discretion" are used interchangeably. See Blankenship, 644 F.3d at 1355 n.5 (citing Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989)).

4

Although courts must account for a structural conflict of interest, when one exists, as "a factor" in the arbitrary and capricious review process, the basic analysis still centers on whether a reasonable basis existed for the administrator's decision. See id. (citing Conkright v. Frommert, 559 U.S. 506, 521, 130 S. Ct. 1640, 1651 (2010) ("[T]he plan administrator's interpretation of the plan 'will not be disturbed if reasonable.' ")). As both this Court and the Supreme Court have noted, "the presence of a structural conflict of interest [is] an unremarkable fact in today's marketplace [and] constitutes no license, in itself, for a court to enforce its own preferred de novo ruling about a benefits decision." Id. at 1356; see also Glenn, 544 U.S. at 120, 128 S. Ct. at 2353 ("The conflict of interest . . . is a common feature of ERISA plans.") (Roberts, C.J., concurring in part and concurring in the judgment).

Lincoln concedes on appeal that the "ultimate issue for this Court . . . is whether Lincoln's decision to deny Till's claim for benefits was at least a reasonable [one]" and accordingly we will forego an analysis of whether the administrator's decision was de novo wrong under the first prong of our analysis. Likewise, it seems clear to us at the second step—and Till does not credibly dispute—that Lincoln had the discretionary authority under the clear language of the policy "to manage th[e] Policy, interpret its provisions, administer claims and resolve questions arising under it." Accordingly, we will begin our analysis at step

5

three and determine whether Lincoln's decision to deny the claim was arbitrary and capricious.

We have little trouble concluding that Lincoln's final decision in this case was reasonable.[2] The plan at issue in this case placed the burden on Till to provide adequate documentation to support her claim.[3] Lincoln adequately considered all of the medical information that had been submitted by Till and gathered through Lincoln's own independent investigation to conclude—with the concurrence of two independent and board-certified specialists—that Till had failed to make a sufficient showing of disability under the plan.

While we certainly take notice of the differing opinions offered by the doctors for both Till and Lincoln, nothing in the record suggests to us that the administrator's decision to afford more or less weight to those opinions was arbitrary and capricious. See Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1279–80 (11th Cir. 2005) ("Giving more weight to the opinions of some experts than to

---

[2]     This Court, in line with several other Circuit Courts of Appeal, will consider only the reasonableness of an administrator's final decision. See, e.g., Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1245 (11th Cir. 2008) (holding that production of documents is required only after "a final decision is reached"); see also, e.g., Khoury v. Group Health Plan, Inc., 615 F.3d 946, 952 (8th Cir. 2010) ("Courts reviewing a plan administrator's decision to deny benefits will review only the final claims decision . . . .").

[3]     Despite not being obligated to do so, Lincoln apparently attempted to gather some medical documentation relating to Till's claim on their own. Any shortcomings in their attempts to do so—which Till points to repeatedly on appeal—should have been apparent to Till before the final decision was made. Therefore, even assuming—which we do without deciding—that Lincoln's mistakes initially led to some information being omitted from her file, Till still had the opportunity and the obligation to supplement that information before a final decision was reached.

6

the opinions of other experts is not an arbitrary or capricious practice."). This includes Till's disagreement with, among other things: (1) Lincoln's treatment of a medical opinion that she could not undergo a physical exam; (2) Lincoln's determination that her condition was not surgical in nature; and (3) Lincoln's determination that she was capable of light work.[4] In light of the entire administrative record, there is simply no evidence by which we could conclude that the administrator's conclusion was arbitrary and capricious.

Additionally, the description of Till's occupation was committed to the sound discretion of the administrator to be determined with reference to how it is "performed in the national workforce; not as performed for a certain firm or at a certain work site." Even assuming that Lincoln's classification of Till's occupation was based entirely on the much-maligned Dictionary of Occupational Titles ("DOT"),[5] this Court—along with several other circuit courts—has held that Lincoln was entitled to rely on the occupational descriptions contained therein. See Stiltz v. Metro. Life Ins. Co., 244 F. App'x 260, 2007 WL 1600036, at *3 (11th Cir. June 5, 2007) (holding that where "[t]he clear plan language allowed [the administrator] to look beyond the requirements of 'the specific position' [plaintiff]

---

[4]    This list is meant to be illustrative only and is not an exhaustive catalogue of the full scope of Till's disagreements with Lincoln's conclusions.

[5]    It is worth noting that the district court found that "Lincoln had considered Plaintiff's written job description, her employer's description of Plaintiff's job duties, and the description of her occupation from the Department of Labor's Dictionary of Occupation Titles ('DOT') to determine the material and substantial duties of Plaintiff's occupation."

7

held, [the administrator] was entitled to rely on the <u>Dictionary of Occupational Titles</u>"). Given that Lincoln was contractually required to consider the manner in which this job is performed in the national workforce, its decision to credit the DOT over Till's personal experience was not only reasonable, it was undeniably correct. Moreover, and despite its flaws, we see no reason why Lincoln should have been required to give more credit to the resources Till cites on appeal than to the DOT. Once again, we will not disturb an administrator's decision to credit one piece of evidence over another without evidence that they abused the discretion that had been committed to them.

Lastly, considering Lincoln's conflict of interest as a factor at the final stage of our analysis,[6] we cannot conclude that the conflict rendered the decision arbitrary and capricious. Lincoln's conflicts of interest are typical of the insurance industry and we have previously rejected attempts to prove that a benefits "decision was tainted by self-interest" based on these standard industry practices. <u>See</u> <u>Blankenship</u>, 644 F.3d at 1357 ("[W]e are not persuaded that the record in this case shows that the conflict itself or the large size of [plaintiff's] requested claims create sufficient concern for a court to deem [the insurer's] benefits decisions

---

[6]    Till urges this Court to reconsider the order of our six-step ERISA test and to conduct the conflict-of-interest analysis before determining if the administrator's decision was arbitrary and capricious at step three. Even if we were inclined to modify the test, which we are not, we are not at liberty to do so here. <u>See</u> <u>United States v. Hanna</u>, 153 F.3d 1286, 1288 (11th Cir. 1998) ("In this circuit, only the court of appeals sitting <u>en banc</u>, an overriding United States Supreme Court decision, or a change in the statutory law can overrule a previous panel decision.").

8

arbitrary and capricious."); see also  Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 (7th Cir. 2004) ("[M]ost insurers are well diversified, so that the decision in any one case has no perceptible effect on the bottom line. There is correspondingly slight reason to suspect that they will bend the rules."); Marrs v. Motorola, Inc., 577 F.3d 783, 787 (7th Cir. 2009) (noting that an administrator's financial interests in maintaining a reputation for "fair dealing" may deter claim denials). Lincoln's conflicts are simply not of such a severity that they will turn an otherwise reasonable decision into an arbitrary and capricious one.

## B. Full and Fair Review

Till also alleges that Lincoln did not provide her a full and fair review of its denial of benefits as required by ERISA.[7] An administrator of an ERISA plan is statutorily required to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . . of the decision denying the claim." 29 U.S.C. § 1133(2) (2009). We have noted that an "administrator must '[p]rovide . . . upon request . . . all documents, records, and other information relevant to the claimant's claim for benefits' to qualify as a 'full and fair review.' " Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1245 (11th Cir. 2008) (quoting 29 C.F.R. § 2560.53-1(h)(2)(iii)). In order for a review

---

[7]    Till's specific allegations are that Lincoln (1) failed to obtain evidence it told her it would retrieve, (2) failed to inform her that this information had not been obtained, (3) failed to provide evidence to its reviewers that was in its possession, (4) prematurely denied her claim, (5) failed to conduct a reasonable investigation, and (6) failed to explain the meaning of "physical exam."

process to be "full and fair," the procedures must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.53-1(h)(2)(iv); see also Glazer, 524 F.3d at 1245. An administrator must have substantial support to deny benefits and must promptly notify a plan participant,

> in writing and in language likely to be understood by laymen, that the claim has been denied with the specific reasons therefor. The [administrator] must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence.

Grossmuller v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am., 715 F.2d 853, 857–58 (3d Cir. 1983).

As the district court exhaustively catalogued, Till's conclusory allegation that she was denied a full and fair review of her claim are without support in the record. Lincoln provided Till with written notice of its decision—and the basis therefor—and provided her with a meaningful opportunity to dispute its findings. Rather than taking the opportunity to submit additional medical evidence prior to Lincoln's final decision, Till responded to this notice by focusing almost entirely

10

on the documentation that had already been provided.[8] Those arguments, which are largely echoed on appeal here, speak to the merits of a decision which, we have already decided above, was reasonable.

### III.    Conclusion

Given the deference that this Court owes to the discretionary decisions of a plan administrator, we cannot conclude that the denial of benefits was an abuse of discretion or that the procedures adopted by Lincoln denied Till a full and fair review.[9] Accordingly, the well-reasoned decision of the district court is

**AFFIRMED.**

---

[8]    Having provided Till with a notice of its decision and the basis therefor, Lincoln's procedures easily overcome the first five of Till's complaints on appeal. See supra note 7. As to the final complaint on appeal—regarding Lincoln's use of the term "physical exam"—Till's argument that her response letter "took issue with the vague, undefined term" is, at best, an overstatement. The letter Till references in making this argument mentions the term "physical exam" only in passing and never requests clarification as to what evidence might satisfy Lincoln in this regard. In any event, any lack of clarity that may have arisen from Lincoln's use of this term does not rise to the level of harm that would have deprived Till of a "full and fair" review.

[9]    For the same reason, we cannot conclude that the district court's decision to deny Till's motion for reconsideration was an abuse of discretion. To the extent that any of Till's assertions in that motion were properly before the district court—something we need not consider—the court was well within its discretion to deny the motion.