[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15855

_____

D. C. Docket No. 06-60112-CV-DMM

PRISCILLA GLAZER,

Plaintiff-Appellant,

versus

RELIANCE STANDARD LIFE INSURANCE COMPANY,
a Pennsylvania Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 21, 2008)**

Before BIRCH, PRYOR and KRAVITCH, Circuit Judges.

PRYOR, Circuit Judge:

This appeal raises an issue of first impression in this Circuit under the Employee Retirement Income Security Act of 1974: when medical reports relied on by a plan administrator during the review of a denial of benefits must be produced to the claimant for her to receive a "full and fair review." 29 U.S.C. § 1133(2). Priscilla Glazer appeals a summary judgment against her complaint about the denial of her application for long term disability benefits by Reliance Standard Life Insurance Company. Id. § 1132(a)(1)(B). Glazer argues that Reliance failed to provide her with a "full and fair review" of its initial decision to deny her application for benefits, the district court applied an incorrect standard of review, and Reliance wrongly denied her benefits. We reject Glazer's argument that Reliance denied her a "full and fair review"; the pertinent federal regulations did not require Reliance to produce the medical reports requested by Glazer during the pendency of the review. We also conclude that the district court applied the correct standard of review and the decision of Reliance to deny Glazer's application for benefits was right. We affirm.

## I. BACKGROUND

For several years, Glazer was employed as a senior technical writer for The Ultimate Software Group, which offered employees insurance for long-term disability with a plan provided by Reliance. The plan granted Reliance discretion

2

"to determine eligibility for benefits." The plan also provided that an insured is "totally disabled" if the insured "cannot perform the substantial and material duties of his/her regular occupation." Glazer began to experience pain in her shoulders in 1996 and has since been diagnosed with several conditions, including myofascial pain syndrome, fibromyalgia, cervical spondylosis, chronic cervical strain, and radiculopathy.

In June 2003, Glazer stopped working based on the recommendation of her physician, Dr. Thomas Hoffeld, and Glazer applied for disability benefits under the plan. During the fall of 2003, Hoffeld found that Glazer had difficulty typing and that she could sit only 33 percent of the time.

On January 13, 2004, Reliance approved Glazer's application. In April 2004, Hoffeld opined that he did "not see [Glazer] returning" to work. Dr. Alan Novick began treating Glazer in October 2003 and noted improvement of her pain in May 2004.

In March 2004, Reliance requested updated medical records from Glazer's physicians. Hoffeld did not respond to the request. On May 7, 2004, Novick represented on a form provided by Reliance that Glazer could sit continuously; perform basic physical activities, including simple grasping and fine manipulation; and work at a sedentary level. Based on an interview of Glazer, Novick's

representations, and job descriptions of Glazer's occupation, Reliance concluded that Glazer was able to perform the requirements of her job.

In July 2004, Reliance terminated Glazer's long-term disability benefits. Glazer visited Dr. Benjamin Lechner, whom she had not seen since February 2003. Glazer submitted to Reliance a report prepared by Lechner in which he reviewed her medical conditions, noted she could not use a computer, and opined that Glazer was "disabled for gainful employment due to this condition." Glazer also requested that Reliance review its benefits determination.

Glazer saw Novick in July 2004, and Novick reported that Glazer was feeling better and had remained stable. Novick saw Glazer once in November 2004, twice in February 2005, and once in March 2005. During these examinations, Glazer complained of increased pain, but Novick's description of her condition remained consistent.

As part of the review of its decision to terminate Glazer's benefits, Reliance submitted Glazer's medical records to Dr. William Hauptman for an independent peer review. After reviewing Glazer's records, Hauptman concluded that Novick's evaluation of Glazer's capabilities in May 2004 was consistent with her medical records. Hauptman reasoned that the improvements in Glazer's physical capabilities after Hoffeld's evaluation in 2003 were the result of Novick's

4

treatment. Hauptman also concluded that there was no medical evidence to support Glazer's complaints of increased pain.

After its review, Reliance denied Glazer's application for long term disability benefits. Glazer filed this action in the district court. The district court granted summary judgment in favor of Reliance.

## II. STANDARD OF REVIEW

We review a summary judgment <u>de novo</u>. <u>Williams v. Bellsouth Telecomms., Inc.</u>, 373 F.3d 1132, 1134 (11th Cir. 2004).

## III. DISCUSSION

We evaluate Glazer's arguments in three parts. First, we consider whether Reliance denied Glazer a "full and fair review." Second, we consider whether the district court applied the correct legal standard. Third, we consider whether the decision of the plan administrator was "wrong."

### A. To Provide Glazer a "Full and Fair Review," Reliance Was Not Required to Produce Hauptman's Report Earlier.

Glazer argues that she was not provided a "full and fair review" of the denial of her request for benefits as required by ERISA. 29 U.S.C. § 1133(2). If benefits are denied, section 1133 requires the plan administrator, "[i]n accordance with regulations of the Secretary," to provide a "full and fair review . . . of the decision denying the claim." <u>Id.</u> § 1133. The administrator must "[p]rovide . . . upon

5

request . . . all documents, records, and other information relevant to the claimant's claim for benefits" for the review to qualify as a "full and fair review." 29 C.F.R. § 2560.503-1(h)(2)(iii). The plan administrator must also "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim." Id. § 2560.503-1(h)(2)(iv).

Glazer argues that the failure of Reliance to provide her with a copy of the report produced by Hauptman during the pendency of the review of the initial denial of benefits deprived her of a "full and fair review." Reliance responds that it was not required to produce the documents it relied upon while it reviewed the initial denial of benefits; the production occurs after a final decision is reached. We agree with Reliance.

Glazer's argument is contrary to the plain text of the regulations. Subsection (h)(2)(iii) requires the plan administrator to produce all "relevant" documents. A document is relevant if it "[w]as relied upon" or "[w]as submitted, considered, or generated in the course of making the benefit determination." Id. § 2560.503-1(m)(8)(i)–(ii). Reliance had not "relied upon" the Hauptman report or used the report "in the course of making the benefit determination" until the determination had been made. After Reliance reached its final decision, all relevant documents generated during the review and initial claim determination had to be produced to

6

the claimant. Id. § 2560.503-1(i)(5). This requirement would be superfluous if the claimant had a right to the documents during the pendency of the review. See Kornblau v. Dade County, 86 F.3d 193, 195 (11th Cir. 1996) (courts should avoid rendering other provisions of a regulation superfluous or inoperative).

The only other circuit court that has decided this issue reached the same conclusion as we do. The Tenth Circuit held, in Metzger v. UNUM Life Insurance Company of America, that "subsection (h)(2)(iii) does not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level reviewers prior to a final decision on appeal." 476 F.3d 1161, 1167 (10th Cir. 2007). The court explained that requiring these documents to be produced earlier would create "an unnecessary cycle of submission, review, re-submission, and re-review." Id. at 1166. The court agreed with the Department of Labor that the purpose of the production of these documents is to enable a claimant to evaluate whether to appeal an adverse determination. Id. at 1167 (quoting ERISA Claim Procedure, 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000)). Documents produced before a decision is made would not assist a claimant in deciding whether to pursue an appeal because the claimant would not yet know if there has been an adverse determination. Id.

### B. The District Court Applied the Correct Legal Standard.

7

Glazer argues that the district court erred when it granted summary judgment because there were factual disputes about whether Glazer was disabled, but this argument misunderstands our standard of review. Our review of a denial of benefits is for whether the decision of the administrator was arbitrary and capricious. Jett v. Blue Cross & Blue Shield of Ala., 890 F.2d 1137, 1139 (11th Cir. 1989). "When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." Id. "[W]e review both the administrator's construction of the plan and concomitant factual findings." See Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1451 (11th Cir 1997).

This Court has created "a well-defined series of steps in reviewing a denial of benefits decision in an ERISA case" to determine whether the decision of the administrator was arbitrary and capricious. Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1231–32 (11th Cir. 2006). "At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry." Id. at 1232 (quoting HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 993 (11th Cir. 2001)) (internal quotation marks omitted).

First, the court "examin[es] the plan documents to determine whether they grant the administrator discretion" in making benefit determinations. Id. If the administrator has discretion under the plan, "then at a minimum, the court applies arbitrary and capricious review and possibly heightened arbitrary and capricious review." Id. (quoting HCA, 240 F.3d at 993) (internal quotation mark omitted). Under either form of review, the court is limited to "the facts as known to the administrator at the time the decision was made." Jett, 890 F.2d at 1139.

"[R]egardless of whether the arbitrary and capricious review or the heightened form of that standard of review applies," the court reviews the decision by the administrator to determine whether it was "wrong." Tippitt, 457 F.3d at 1232; see also Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1326 (11th Cir. 2001) (quoting Brown v. Blue Cross & Blue Shield of Ala., Inc., 898 F.2d 1556, 1566 n.12 (11th Cir. 1990)). A decision is "wrong" if, after a review of the decision of the administrator from a de novo perspective, "the court disagrees with the administrator's decision." Williams, 373 F.3d at 1138 & n.8. The court must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator. If the court determines that the plan administrator was right, the analysis ends and the decision is affirmed. Tippitt, 457 F.3d at 1232.

9

Glazer's argument that the district court applied the wrong standard fails. Although there was a dispute about whether Glazer was disabled, there was no dispute about what was in the record when Reliance made its decision. The district court had to review that record and decide whether the resolution of the dispute by Reliance was wrong. The district court reviewed the record and determined that the decision by Reliance was right, which ended the analysis of whether the decision of Reliance was arbitrary and capricious. Id. The district court applied the correct standard of review.

*C. The Decision by Reliance to Deny Benefits Was Right.*

Glazer also contends that the record establishes that she is entitled to disability benefits. To evaluate that argument, we consider, as the district court did, whether the decision of Reliance was "wrong." Id. We are limited to the record that was before Reliance when it made its decision. Jett, 890 F.2d at 1139. Glazer bears the burden to prove that she is disabled. Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998).

The denial of Glazer's application for benefits by Reliance was not wrong. Glazer failed to establish that she is disabled. Glazer asserts that the record "clearly demonstrated" that she is disabled under the plan, but she fails to explain how her condition prevents her from performing the "substantial and material"

duties of her occupation.

The only support in the record for Glazer's position is Hoffeld's statement and Lechner's report, but that support is unpersuasive. Hoffeld stated that Glazer was not capable of performing her occupation in April 2004, but his opinion was formed before Novick's treatment led to an improvement in Glazer's condition in May 2004. Hoffeld also failed to respond to the request from Reliance for updated medical records. Lechner opined that Glazer was "disabled" in July 2004, but Lechner, who had not seen Glazer in over one year, expressed an opinion that was contrary to both the contemporaneous observations of Novick and the independent peer review by Hauptman. Neither Hoffeld nor Lechner compared Glazer's physical capabilities with the requirements of her occupation.

The record contains ample evidence that Glazer is not disabled within the meaning of the policy. Her physician, Novick, reported that she was capable of sitting for an eight-hour day, frequent walking, standing, climbing stairs, and simple grasping with her hands. Reliance compared this information about her physical capabilities with a description of her job and determined that she was capable of performing her job requirements. Reliance also relied on the opinion of its reviewing doctor, Hauptman, who reviewed Glazer's medical records and stated that the record supported Novick's findings and that she was capable of working.

11

We agree with the district court that Glazer failed to establish that she was totally disabled. Because we conclude that Reliance was right, our analysis of the denial of Glazer's application ends. The district court was correct to enter summary judgment in favor of Reliance.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Reliance Standard Life Insurance Company.

**AFFIRMED**.