[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15864
Non-Argument Calendar
_____

D.C. Docket No. 9:11-cv-81091-KLR

PATRICIA HERRING,

Plaintiff - Appellant,

versus

AETNA LIFE INSURANCE COMPANY,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 29, 2013)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

In this appeal, Patricia Herring challenges the district court's grant of Aetna Life Insurance Company's (Aetna) motion for summary judgment. Because Herring has not shown reversible error, we affirm.

I.

Herring worked as an accounts payable clerk for Alphastaff, Inc. Through Alphastaff, Herring was eligible to receive long term disability (LTD) benefits as a participant in an employee welfare benefit plan under a group insurance policy issued by Aetna. Aetna served as the plan's claim administrator, meaning it had discretionary authority to determine whether Herring was entitled to benefits under the terms of the policy.

In March 2009, Herring ceased work and underwent coronary artery bypass surgery. Subsequently, she applied for LTD benefits. Under the policy, LTD benefits were payable for a period of "total disability." The policy defines total disability as: (1) one who is not able to perform the material duties of her occupation; or (2) one who is not able to work at any reasonable occupation. Reasonable occupation is defined as "any gainful activity for which [one is], or may reasonably become, fitted by education, training, or experience." A reasonable occupation includes "sedentary work," where standing and walking are

2

required only occasionally.  A period of total disability ends when one ceases to be totally disabled or fails to give proof of her continued total disability.

Aetna approved Herring's claim for LTD benefits effective June 27, 2009. On August 31, 2009, Aetna notified Herring that as of June 27, 2010, her eligibility for continued benefits would be contingent upon evidence that she was totally disabled.  In July 2010, at Aetna's request, Dr. Josef Hudec performed an Independent Medical Examination (IME), and concluded that Herring was capable of working.  A Vocational Rehabilitation Consultant (VRC), who was employed by Aetna, reviewed Dr. Hudec's findings, and identified five sedentary occupations Herring could perform, as well as the local employers for each occupation.  In August 2010, in light of the IME and the VRC's findings, Aetna terminated Herring's LTD benefits on the grounds that Herring could perform a "reasonable occupation," as defined under the policy.

Herring appealed Aetna's termination decision.  In her appeal, Herring included a letter from her treating cardiologist, Tobia Palma, stating that Herring was totally disabled and had "no ability to work."  In evaluating the appeal, Aetna hired three physicians to review Herring's medical records.  Two of the three doctors concluded that Herring was capable of sedentary work and not totally disabled.  The third physician offered a more restrictive view of Herring's physical capabilities.  His review was consistent with the comments made by Dr. Joshua

3

Levy, a physiatrist referred by Herring's family practitioner and assigned by Aetna to offer his medical opinion on the results of the IME.  Dr. Levy agreed that Herring was able to work; however, he noted that she was capable of working fewer hours per day with more restrictive limitations on the tasks she could perform.

After considering the reports of all 3 physicians, Aetna affirmed its decision to terminate Herring's benefits and issued its final decision by letter dated June 30, 2011.

## II.

The Employee Retirement Income Security Act (ERISA) itself does not provide a standard for courts to review the benefits determinations of plan administrators or fiduciaries.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948, 953 (1989).  With *Firestone* and *Metropolitan Life Insurance Company v. Glenn*, 544 U.S. 105, 128 S. Ct. 2343 (2008), as guides, however, this circuit has formulated a multi-step framework for courts reviewing an ERISA plan administrator's benefits decisions:

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

4

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir.) (per curiam), *cert. denied*, 132 S. Ct. 849 (2011).

Under this framework, Herring bears the burden of proving that she is disabled and that Aetna's decision is wrong. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008). If Herring satisfies this burden, she then must demonstrate that Aetna's decision to deny her LTD benefits was arbitrary and capricious; that is, she must show that had no reasonable grounds support Aetna's decision. *Id.* at 1246.

The district court found that Aetna was not "de novo wrong." We agree. Herring's LTD benefits were payable for a period of "total disability." A period of total disability ends when one is not totally disabled or fails to supply proof of her continued total disability. Here, Herring has not shown proof of her continued

5

disability.  Two reviewing physicians considered the medical evidence and found Herring was capable of sedentary work.  Their findings were consistent with the IME performed by Dr. Hudec, who also found that Herring was capable of sedentary work.  This evidence was considered in conjunction with the VRC report, which identified sedentary occupations available to Herring in her geographical area.  *See Richey v. Hartford Life & Acc. Ins. Co.*, 608 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009) (finding that "the use of vocational evidence in conjunction with medical evidence is an effective method of reaching an informed decision as to a claimant's work capability").

Even if Aetna's decision had been "de novo wrong," because Aetna had discretion to determine whether Herring was entitled to LTD benefits under the policy, Herring bears the burden of showing that Aetna's decision was arbitrary and capricious.  *See Glazer*, 524 F.3d at 1246.  She cannot.  While one of the reviewing physicians agreed with Dr. Levy that Herring was restricted in her performance of sedentary work, it was not unreasonable for Aetna to rely on the findings of the other two reviewing physicians, in conjunction with the IME and the VRC.  *See Blankenship*, 644 F.3d at 1356 (holding that a termination decision was not unreasonable where it "relied upon the advice of several independent medical professionals" and found that the claimant failed to provide conclusive medical evidence of disability).  While it is true that Dr. Parma, Herring's treating

physician, determined the exact opposite—that Herring was totally disabled and could not work—his conclusion does not automatically qualify Aetna's termination decision as arbitrary and capricious.  Aetna "need not accord extra respect to the opinions of a claimant's treating physicians." *Id.*  Accordingly, the district court properly granted Aetna's motion for summary judgment.[1]

   **AFFIRMED.**

---

[1] In light of our decision affirming the district court, Aetna's motion to strike portions of Herring's reply brief is denied as moot.